JOSEPH B. THAXTER, executor, *vs.* EVA A. TRAISER.

Norfolk.   November 16, 1939. — February 28, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Gift.*

A conclusion that a husband made a gift to his wife of at least a present interest in bonds, to ripen into full ownership on his death, was warranted by findings that he purchased them from proceeds of a sale of real estate which he stated he intended to invest for her benefit, and that most of them on his death were in an envelope bearing her name in a safe deposit box which together they had placed in their names as joint tenants, either or the survivor to have access to it, although with her consent he had pledged bonds not found in the box for a personal loan, and had placed the income from all of the bonds in his personal account under an agreement between them that he should pay certain expenses of her real estate, and had made return of the income in his personal income tax returns.

PETITION IN EQUITY, filed in the Probate Court for the county of Norfolk on January 20, 1939.

The case was heard by *Davis*, J., and in this court was submitted on briefs.

*H. C. Connor & J. S. Marsh*, for the petitioner.

*K. D. Johnson*, for the respondent.

DOLAN, J.   This is a suit in equity in which Marion J. Thaxter, one of the executrices of and the residuary legatee

under the will of Charles H. Traiser, late of Milton deceased, sought to have certain negotiable bonds, claimed by the respondent as a gift from the deceased in his lifetime, decreed to be assets of the estate of the deceased. After the filing of the petition, Marion J. Thaxter died, and the executor of her will was substituted as party petitioner. The respondent is the widow of Charles H. Traiser, hereinafter referred to as the deceased, and is the surviving executrix of his will. The case comes before us on the appeal of the petitioner from the decree entered by the judge that the bonds in question are the property of the respondent.

The evidence is not reported, and the record does not disclose that any request for a report of material facts was made by either of the parties under G. L. (Ter. Ed.) c. 215, § 11. The judge, however, did make a report of facts entitled "Report of Material Facts." It is not stated in the report by the judge, nor is it indicated therein other than by its title, that the report contains all the facts that entered into his decree. The parties, however, have argued the case as if the report was of all the facts that entered into the decree, and, since the result will be the same as if this were not so, we deal with it on the basis upon which the parties have proceeded. So treated "there is no room for any implication of further findings." *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 562, and cases cited.

The material facts found by the judge are substantially as follows: The securities involved are bearer bonds aggregating in par value $11,000. Included among them are two $1,000 bonds of the Utah Power & Light Company. In 1934 the deceased sold certain real estate in Marblehead for $12,000. He told the respondent that he desired her to have the sum realized from this sale for her needs and that he would invest it so as to give her a monthly income. Bonds of the par value of $4,000 were purchased by the deceased on March 5, 1936, bonds of the par value of $2,000 (those of the Utah Power & Light Company) on March 13, 1936, bonds of the par value of $2,000, on April 6, 1936, bonds of the par value of $2,000, on April 13, 1936, and a bond of the par value of $1,000 on December 9, 1936. The aggregate

purchase price of the bonds was $9,913.89. On March 17, 1936, a deposit was made in joint account in the names of the deceased and the respondent in a savings bank. The amount of the deposit is not stated in the report. The joint account was made because of the arrangement of the deceased with the respondent in relation to the proceeds of sale of the real estate before referred to. On March 17, 1936, the deceased and the respondent went to the offices of a trust company where the deceased had a safe deposit box. He introduced the respondent to attendants "at the vault and at this time this safe deposit box was placed in the joint tenancy" of the deceased and the respondent. They signed an agreement in the following terms: "We agree to hire and hold Safe No. 26243 as joint tenants, the survivor or survivors [*sic*] only to have access thereto in case of the death of either." The deceased told the respondent that "he was making this a joint box so that it would be accessible to her and to him, that he had bought some of the bonds and that he would buy some more" from the proceeds of sale of the real estate.

On October 27 (whether in the year 1936 or the year 1937 does not appear) the deceased, with the knowledge and consent of the respondent, pledged the bonds of the Utah Power & Light Company for a loan of $750, negotiated for the purpose of paying his taxes to the town of Milton. After the death of the deceased, this loan was paid from funds of his estate. During his lifetime the deceased collected the interest on all the bonds and placed it to his own account. This was done in accordance with an arrangement between the deceased and the respondent "whereby the" deceased "paid the expenses over and above the income" on certain real estate owned by the respondent. The deceased accounted for the income received from the bonds in his State and Federal income tax returns.

After the death of the deceased the bonds in question, except those of the Utah Power & Light Company, were found in an envelope in the joint safe deposit box. The envelope was indorsed "Property of Eva A. Traiser" (the respondent). A brief description of all the bonds in question

was also indorsed on the envelope. These indorsements were in the handwriting of the deceased. The respondent "visited the joint safe deposit box without being accompanied by . . . [the deceased on] January 27th 1938, and saw the envelope" just referred to. After the death of the deceased she took possession of the bonds.

The petitioner contends that the facts found do not warrant a conclusion that there was a delivery of the bonds by the deceased to the respondent, and hence that any attempted gift failed; and, further, that the retention of the income from the bonds by the deceased, the pledge by him for a personal loan of the bonds of the Utah Power & Light Company, the inclusion in his State and Federal income tax returns of the income from all the bonds, and the circumstance that the respondent did not in fact make any attempt to touch the bonds or use them in any way during the life of the deceased, "clearly prove that . . . [the deceased] did not for one instant yield control of the bonds to the respondent."

It is true that no actual manual delivery of the bonds is shown, but the acts and declarations of the deceased and the respondent, including the hiring of the safe deposit box jointly, the placing of the bonds involved therein in one envelope containing the notations of the deceased thereon, and the free access which the respondent had to this place of joint depository, all serve to show an intention of the deceased and the respondent to treat the bonds as delivered. This is further evidenced by the finding of the judge that, in collecting the income from the bonds and placing it to his own account, the deceased was acting in accordance with an agreement with the respondent which was to her advantage; and by the further finding that the pledge of the bonds of the Utah Power & Light Company by the deceased for a personal loan was with her knowledge and consent. Upon these facts the judge was right in finding sufficient delivery. See *Sullivan* v. *Hudgins*, 303 Mass. 442, 447–448, and cases cited.

Even if the facts found would require the conclusion that the deceased reserved to himself a life interest in the

bonds, and we do not so decide, such action on his part, "though to be considered in determining his intention, is not inconsistent with a present gift of the corpus of the property." *Robinson* v. *Pero,* 272 Mass. 482, 485. *Goldston* v. *Randolph,* 293 Mass. 253, 256. At least on the findings of the judge there was a present gift by the deceased to the respondent of an interest in the bonds which ripened into full ownership on her part upon his death.

*Decree affirmed.*